# Richmond

JAMES L. JENKINS v. ALVANIA WOMACK.

June 22, 1959.

Record No. 4964.

Present, All the Justices.

The opinion states the case.

*William L. Shapero* (*Maurice B. Shapero; Shapero & Shapero,* on brief), for the plaintiff in error.

*Stanley E. Sacks* (*Sacks & Sacks,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff below, Mrs. Alvania Womack, obtained a jury verdict against the defendant, James L. Jenkins, for personal injuries suffered by her while she was riding in an automobile being driven by the defendant. The court entered judgment on the verdict and the defendant appeals, asserting that the plaintiff was a guest in the car and that the evidence was insufficient to convict the defendant of gross negligence. Code § 8-646.1.

The plaintiff files a motion to dismiss the appeal for the failure of the defendant to designate the parts of the record to be printed as required by Rule 5:1, § 6, of the Rules of Court. As we have said several times, the intent and purpose of this Rule is to have printed all that is germane to the assignments of error. *Bonich* v. *Waite,* 194 Va. 374, 73 S. E. 2d 389; *Farrow* v. *Commonwealth,* 197 Va. 353, 357, 89 S. E. 2d 312, 315; *DeMott* v. *DeMott,* 198 Va. 22, 92 S. E. 2d 342; *Whitlow* v. *Grubb,* 198 Va. 274, 93 S. E. 2d 134. See also "Appellate Procedure in Virginia Under the Rules of Court" by Aubrey Russell Bowles, Jr., 44 Va. Law Rev. 475, 484.

Specifically we have said: "The appellant who asks us to set aside a finding of the trial court on the ground that it is not sustained by the evidence has the primary responsibility of designating all of the evidence which is necessary and material for us to determine that issue." *DeMott* v. *DeMott, supra,* 198 Va. at 24, 92 S. E. 2d at 343.

The present appellant did not fairly perform his duty in that respect. He omitted from his designation testimony that was material to the issue which he asks us to decide. The parts he omitted were not helpful to him, but in asserting that the evidence did not support the verdict it was his duty to put into the printed record the material parts of that evidence. His failure did not in this instance however result in an inadequate printed record. Appellee's counsel exercised his right under the same Rule to make additional designations and all the material evidence is before us in the printed record. The motion to dismiss the appeal is overruled.

The material evidence with the conflicts in it settled in favor of the plaintiff by the jury's verdict presented the following case:

The plaintiff, Mrs. Womack, was employed in a drug store in Norfolk and in off hours worked for a private detective, for whom the defendant Jenkins also did some part-time work. Their acquaintance prior to the accident had been limited to the few times they had been on cases together. The plaintiff could drive a car but did not know how to park and had no driver's license. On Sunday, September 8, 1957, the defendant called the plaintiff and inquired whether she would like to go out and try to learn to park so she could get a license. She replied that she would and she got into his car at a designated place and they started out toward the new police headquarters on Tidewater Drive.

They crossed a bridge and entered upon Jamestown Crescent, a street which enters Hampton Boulevard on a slight curve to the right in a northerly direction. Hampton Boulevard is a four-lane highway running north and south, and Jamestown Crescent, which is a two-way street, enters it from the east. At the intersection is a traffic light designed to regulate the northbound traffic on Hampton Boulevard. On Jamestown Crescent near the intersection was a traffic sign "Merging Traffic." Soon after they crossed the bridge the defendant remarked to the plaintiff, "There is a car following awfully close to us." The plaintiff turned around and saw the car. She said the defendant at that time was driving between 30 and 35 miles an hour. As they approached the intersection she saw the light on Hampton Boulevard change to caution. She knew that the defendant was not supposed to stop at the intersection but to proceed slowly and with caution. She did not tell the defendant about that because he began to slow down and she thought he was going to stop. But he did not, she said, "He just speeded up and kept going. Then all of a sudden he stopped fast." She said he did not slow down too much and that after he speeded up she guessed he was back up to the speed he was going before he began to slow down.

When the defendant suddenly put his brakes on and stopped it threw her forward and by the time she got back to the seat the car that was following struck the defendant's car in the back and threw her forward again, causing her the injuries for which she sued.

The accident happened about 12:45 p.m. She testified that it was a fair day and she could see the traffic light clearly from her seat in the car; that as they approached the intersection the light

changed from caution to red, and it was red when the defendant came to a stop. There was no reason, she said, why the defendant could not have seen the caution light as she did if he had been looking.

She said the defendant gave her no warning of his intention to stop. After the accident she stated that the defendant gave a hand signal before he stopped, but she made that statement, she said, because the defendant told her to do so and she did not in fact see him do that.

A police officer testified that the traffic light on Hampton Boulevard was not supposed to affect the flow of traffic on Jamestown Crescent. The light, he said, had a protective shield and from Jamestown Crescent "you can catch a portion of the light." The defendant told him he was driving at about 20 miles an hour and as he came to the intersection he became confused at the traffic light and made a sudden stop. The speed limit on Jamestown Crescent was 30 miles an hour and on Hampton Boulevard it was 35.

The car which struck the defendant's car was driven by Woodson, who was also a defendant to the plaintiff's suit. The plaintiff called him as her witness and he testified that he was about two car lengths behind the defendant when they crossed the bridge and from there to the intersection he, Woodson, never got up to 30 miles an hour and was going 26 miles an hour just before he struck the defendant's car, and was about one car length or a little more behind the defendant when the latter suddenly stopped without giving any kind of signal. The defendant was going 30 miles an hour after they crossed the bridge and had slowed down some before he stopped. When the defendant stopped Woodson applied his brakes, swerved to his left and the right front of his car struck the left rear of the defendant's car. Neither car left any skidmarks. He said the red light was only for Hampton Boulevard and the defendant admitted at the scene that he did not know he was supposed to keep going.

The defendant's version was that he was proceeding along Jamestown Crescent at 20 or 25 miles an hour; that as he approached the intersection he noticed a heavy flow of traffic going north on Hampton Boulevard, and not being familiar with the intersection he slowed down gradually and as he reached the intersection "all of a sudden" he looked up at the light which hangs in the middle of the intersection and it turned red. He assumed the light was for him so he applied his brakes, gave a hand signal and stopped. He was then going about 5 miles an hour.

Giving the testimony for the plaintiff all the force and effect it may fairly be said to possess, it clearly falls short of proving gross negligence on the part of the defendant.

Gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. *Hershman* v. *Payne*, 196 Va. 241, 245, 83 S. E. 2d 418, 420; *Dickerson* v. *Miller*, 196 Va. 659, 660, 85 S. E. 2d 275, 276; *Barnes* v. *Barnes, Adm'r*, 199 Va. 903, 906, 103 S. E. 2d 199, 201.

Certainly there was no utter disregard of prudence amounting to complete neglect of the safety of the plaintiff in the speed at which the defendant approached the intersection; nor in his failure to see the caution light of the traffic signal in the intersection while watching the traffic on the street which he was about to enter; nor in quickly stopping when he suddenly saw the light turn red and thought it required him to stop. These were not separate acts of negligence having the cumulative effect of showing reckless conduct. They were parts of the same incident in which he came to an intersection with which he was not familiar and failed to appraise correctly the meaning of a red traffic light which he suddenly saw in front of him. At the most the evidence shows only simple negligence for which the plaintiff as a guest was not entitled to recover. Code § 8-646.1, *supra*.

The plaintiff assigned cross-error to the refusing and granting of certain instructions. She did not designate them to be printed but her brief states that the rulings precluded the jury from deciding whether she was a paying passenger entitled to recover for simple negligence, or a guest who could recover only for gross negligence. Her theory of being a paying passenger was based on some nebulous testimony to the effect that both she and the defendant occasionally worked together in the detective business and if she learned to park a car and got a driver's license it would be helpful in their work and he would thereby derive some benefit. The evidence proves only that the service to be rendered by the defendant in teaching her to park was a gratuity and a friendly act. She was a guest passenger and had no right to recover except upon proof of gross negligence. *Smith* v. *Tatum*, 199 Va. 85, 97 S. E. 2d 820.

The judgment appealed from is reversed and final judgment for the defendant will be entered here.

*Reversed and final judgment.*